UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FARAH E. HOSSEINI, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 17-cv-12248-ADB |
| | * |
| NANCY A. BERRYHILL, | * |
| *Acting Commissioner of Social Security*, | * |
| | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Farah Hosseini ("Claimant") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Social Security Disability Insurance ("SSDI") benefits. Currently pending are Claimant's motion to reverse the Commissioner's decision denying her disability benefits, [ECF No. 18], and the Commissioner's cross-motion for an order affirming the decision, [ECF No. 20]. For the reasons set forth herein, the Court finds that the Administrative Law Judge's decision was supported by substantial evidence and therefore DENIES Claimant's motion to reverse and remand and ALLOWS the Commissioner's motion to affirm.

**I.  BACKGROUND**

**A.  Statutory and Regulatory Framework: Five-Step Process to Evaluate Disability Claims**

The Social Security Administration is the federal agency charged with administering both the SSDI benefits program, which provides disability insurance for covered workers, and the

Supplemental Security Income ("SSI") program, which assists the indigent, aged, and disabled. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Social Security Act (the "Act") provides that an individual shall be considered "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A). The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process. The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

**B.     Procedural Background**

Claimant filed her application for disability insurance benefits on September 20, 2014. [R. 203–210].[1] She alleged that she became disabled on June 15, 2012, due to a combination of

---

[1] References to pages in the Administrative Record, which were filed electronically at ECF No. 14, are cited as "[R. __ ]."

mental health disorders and chronic pain. [R. 203, 223]. Her date last insured was December 31, 2017. [R. 21].

Claimant's application was reviewed initially and on reconsideration by different teams, each including a medical professional and a disability specialist; both teams determined that she was not disabled. [R. 100–11, 113–28]. The Social Security Administration ("SSA") first informed Claimant that her application had been denied on December 19, 2014. [R. 132]. Claimant requested reconsideration of her application on December 29, 2014, [R. 135], and the SSA informed her of its denial upon reconsideration on April 6, 2015, [R. 136–138]. Thereafter, Claimant requested an administrative hearing, which was held on September 2, 2016 before Administrative Law Judge Sean Teehan ("ALJ"). [R. 20]. The ALJ issued a decision finding that Claimant was not disabled on September 26, 2016. [R. 33]. The SSA Appeals Council denied Claimant's Request for Review on September 13, 2017. [R. 1–5]. On November 14, 2017, Claimant filed a complaint with this Court, seeking review of the Commissioner's decision pursuant to section 205(g) of the Act. [ECF No. 1]. On April 30, 2018, Claimant filed her motion for an order reversing the decision of the Commissioner that is before the Court, [ECF No. 18], and the Commissioner filed her cross-motion on June 11, 2018, [ECF No. 20].

Claimant makes two arguments for reversing the Commissioner's decision. First, she claims that the ALJ failed to properly evaluate the effect of her mental impairments; second, she claims that the ALJ's credibility assessment was deficient because it failed to consider her exemplary work history. [ECF No. 19]. The Court will focus on the Claimant's employment background and mental impairments in providing an overview of this case, though the Court recognizes and has considered the physical impairments evidenced by the record and recognized by the ALJ's decision.

C.   **Employment Background**

Claimant was born on October 21, 1960 and was 55 years old when the ALJ's decision was issued. [R. 33, 203]. She immigrated to the United States from Iran in the mid-1980s, and received an associate degree in computer science from Bunker Hill Community College. From the early 1990s until 2012, Claimant worked in various information technology jobs and had covered earnings in all but one year. [R. 46–58, 64, 212–13, 224]. Her earnings peaked at more than $90,000 in 1999. [R. 212]. Claimant most recently worked part-time as a consultant for a Boston law firm, but the firm's need for her services ceased in mid-2012, and she has not worked since. [R. 58, 224]. Claimant lives with her husband in a multifamily home from which she derives some income in Reading, Massachusetts. [R. 47, 65].

D.   **Medical Evidence**

Claimant has a history of depression, anxiety, and alcohol dependence. [R. 368, 377]. In October 2012, Claimant was diagnosed with depressive disorder and alcohol dependence and was hospitalized at North Shore Medical Center for detoxification and to help with her depression. [R. 289–97]. Claimant reported that she felt "extremely depressed and ha[d] been drinking a bottle of wine and some vodka daily." [R. 295]. Claimant was admitted to a partial hospitalization program at Addison Gilbert Hospital in October 2012 and again in August 2013. [R. 304–26]. When she was discharged in August 2013, Claimant was found to be on track with her treatments. [R. 309].

In December 2014, Claimant was evaluated by psychologist Dr. James Munroe and diagnosed with alcohol use disorder and major depressive mood. [R. 367–71]. Claimant had a depressed mood, diminished interest in almost all activities, difficulty sleeping, fatigue, and diminished ability to concentrate and make decisions. [R. 371]. Dr. Munroe's prognosis for

4

Claimant was "poor," and he found that Claimant's depression and alcohol use were long-standing and chronic. Although Claimant had no psychomotor agitation, retardation, suicidal ideation, her insight and judgment were intact, she completed her activities of daily living in a timely manner, was able to reason and manage complicated family issues, and her understanding and memory were intact despite her being anxious and somewhat distracted, Dr. Munroe concluded that she could benefit from more extensive mental health treatment. [R. 367–72].

Periodic treatment records from 2015 also show Claimant had problems with alcohol abuse, anxiety disorder, and depressive disorder. [R. 373–485; 500–41]. Claimant was admitted to Bayridge Hospital for her mental impairments and substance abuse on May 12, 2015,[2] and received treatment from Lahey Health Inpatient Behavioral Health Services beginning on May 27, 2015 for post-traumatic stress disorder, alcoholism issues, and what she described as "sleeping issues, difficulty breathing, feeling sad and hopeless about her future and difficulty concentrating." [R. 486–94, 497, 551–61]. As of June 23, 2015, Claimant was taking medications for her conditions but was nonetheless experiencing anxiety, depression, and issues with alcohol consumption. [R. 551–52]. It was recommended that she attend group and individual therapy. [R. 559]. Progress notes from Lahey Health demonstrate that Claimant attended an outpatient program, received acupuncture, and found both helpful. [R. 580]. She was able to decrease her alcohol consumption throughout June, July and August of 2015. [R. 583, 591–94].

---

[2] The medical records contain inconsistent dates regarding this hospitalization. The ALJ found that Claimant had been hospitalized from May 11 to May 19, which is consistent with notes in the medical record, e.g. [R. 580]. The records from Bayridge indicate that Claimant was admitted on May 12, e.g. [R. 490].

5

In March 2016, Claimant had a psychiatric evaluation for assessment and management of alcohol abuse, anxiety, and depression. [R. 645]. Claimant reported that since May 2015, she had been doing better and not abusing alcohol, and that she had stopped taking her medication in January 2016. [R. 645]. Thereafter, multiple individuals close to Claimant died, including a best friend and a sister-in-law, and her mother had a stroke. [R. 645]. Claimant increased her alcohol intake in January and February 2016 and was drinking a couple times per week, about 5 drinks of vodka each time. [R. 645]. Claimant had no thoughts of hurting herself or anyone else, her appetite and energy were normal, but she felt depressed, and experienced below normal interest and ability to concentrate. [R. 646]. Claimant diagnoses were alcohol dependence and major depression recurrent mild. [R. 646].

In July 2016, Claimant visited the emergency department of Lahey Clinic, complaining of a shoulder injury. [R. 1011–38]. She received a psychiatric exam, which found Claimant's speech and behavior were normal, her thought content was normal, cognition and memory were normal, but she appeared anxious and depressed. [R. 1021]. Dr. Janet Young found Claimant was experiencing significant anxiety and actively drinking. [R. 1022]. Dr. Young recommended outpatient psychiatry and therapy. [R. 1022].

In addition to Claimant's treating history, as part of the state agency's disability determination, Dr. James Carpenter found in December 2014 that claimant had no restriction of daily living, mild difficulty in maintaining social functioning, and mild difficulty in maintaining concentration, persistence or pace. [R. 105–06]. After Claimant's request for reconsideration, Dr. Lois Condie evaluated her impairments in March 2015 and found that Claimant had moderate difficulty in maintaining social functioning, mild restriction of daily living, and mild difficulty in maintaining concentration, persistence or pace. [R. 120–26]. Dr. Condie also found

that Claimant related adequately and got along with authority figures, concentrated adequately for simple tasks, had difficulty leaving the house but could do so as needed, and had difficulty with some tasks due to pain. [R. 120]. Dr. Condie concluded that Claimant was "best suited for moderately paced work with limited demands for interaction with the public." [R. 126].

With respect to physical impairments, Claimant's treating physician Dr. Eric Tolo provided a treating source opinion. [R. 562–65]. In April 2014, Dr. Tolo diagnosed Claimant with limitations in her right shoulder (adhesive capsulitis, rotator cuff tendinopathy / impingement), trigger finger (middle finger, left hand), and diffuse bilateral hand pain. [R. 562]. Dr. Tolo found that Claimant could rarely reach her right arm overhead, could occasionally reach in other directions, and could rarely push/pull. [R. 563]. He found Claimant could lift/carry under 10 pounds occasionally, lift/carry 10 pounds rarely, and could not lift/carry anything above 20 pounds. [R. 564].

Residual functional capacity ("RFC") profiles provided by non-examining state agency consultants Drs. Draper and Goulding found Claimant could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit with normal breaks for about 6 hours in an 8-hour workday; and could push/pull with limitation in the upper right arm. [R. 106–09; 121–24]. Drs. Draper and Goulding found that Claimant had some postural and manipulative limitations. [R. 107–08; 122–23].

### E. Hearing

On September 2, 2016, Claimant testified at a hearing before the ALJ. [R. 40]. Since last working in 2012, Claimant has managed work around her property, attended appointments and managed her medical treatment, and traveled to Iran for dental work and to California to spend time with her daughter in 2016. [R. 69–76].

7

Vocational expert Estelle Hutchinson also testified at the hearing. [R. 79]. The vocational expert identified Claimant's earlier past work as desktop support, which is medium in exertion and skilled. [R. 80]. The other occupation identified by the vocational expert was software engineer, which is sedentary in exertion and skilled. [R. 80]. The vocational expert testified that with the limitations identified by the ALJ, a person of the same age, education, language, and work background would be able to perform the work of a software engineer but not a desktop support technician. [R. 81].

F.   **The ALJ's Decision**

On September 26, 2016, the ALJ issued a decision finding that Claimant was not disabled under sections 216(i) and 223(d) of the Act. [R. 33]. At step one, he found that Claimant had not engaged in substantial gainful activity since the alleged onset date. [R. 21–22]. At step two, he concluded that Claimant had the severe impairments of mild cervical degenerative disc disease and right shoulder tendinopathy, and the non-severe impairments of anxiety, depression, and substance abuse disorder. [R. 21–22]. After a thorough review of Claimant's medical history, including her mental health problems, the ALJ concluded "that the record contains medical evidence referring to anxiety, depression, and alcohol abuse," but he found those impairments to be non-severe. [R. 27]. He explained:

> Mentally, the record establishes that the claimant has a history of depression and anxiety that [has] been treated. Although the claimant may be nervous at times, these impairments result in mild functional limitations as the claimant retains the ability to understand, remember and carry out instructions. She is able to perform routine repetitive tasks. She can sustain focused attention and concentration sufficient to perform and complete timely and appropriate tasks. She can act independently as well as interact appropriately with co-workers, supervisors and the general public. She would be able to complete a normal workday without excessive interruptions from psychological symptoms. Therefore, I find these impairments to be non-severe.
>
> In the present matter, the claimant has an alcohol abuse disorder. The claimant has undergone detoxification for this disorder. She has been successful in reducing her

> consumption. She attends AA meetings. She has remained reasonably functional despite her alcohol abuse.
>
> The record contains no evidence of any additional treatment or observed signs and symptoms resulting from this alleged condition that would more than minimally affect the claimant's ability to engage in work-related activities. Accordingly, I find these alleged impairments to be nonsevere within the meaning of the regulations.
>
> The claimant's medically determinable mental impairments of an affective disorder and anxiety related disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.

[R. 27 (citation omitted)]. The ALJ then analyzed the four paragraph B criteria at length. He found that Claimant had mild limitations with respect to daily living, social functioning, concentration, persistence or pace, and no episodes of decompensation that had been of extended duration. [R. 28]. At step three, which the ALJ reached because of Claimant's physical impairments, the ALJ found that Claimant's impairments did not meet or equal the impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. [R. 29]. At step four, he determined:

> Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is able to lift and carry twenty pounds occasionally and ten pounds frequently. She is able to sit for six hours out of an eight-hour workday. She is able to stand and/or walk six hours out of an eight-hour workday. She would be able to occasionally climb stairs and ramps but never ropes, ladders or scaffolds. She would be able to occasionally balance, stoop, crouch, kneel, and crawl. She would only occasionally be able to reach overhead with the right upper extremity and only occasionally be able to push and pull with the right upper extremity.

[R. 22, 30]. The ALJ concluded that Claimant was capable of performing past relevant work as a software engineer, and his analysis therefore ended at step four with the conclusion that Claimant was not disabled. [R. 33].

## II. STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 205(g) of the Act. 42 U.S.C. § 405(g). Section 205(g) provides that an individual may obtain judicial review of a final decision of the Commissioner by instituting a civil action in federal district court. See 42 U.S.C. § 405(g). The district court may take a number of actions with respect to the Commissioner's decision. First, under sentence four of section 205(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Id. A court's decision under sentence four, however, can be based only on a review of the administrative record of proceedings before the Commissioner. See Whitzell v. Astrue, 792 F. Supp. 2d 143, 147 (D. Mass. 2011) (quoting 42 U.S.C. § 405(g)). If a claimant presents new evidence to the court that was not contained within the administrative record, the court may not consider it. "If additional evidence is to be considered, it must be by way of remand[]" pursuant to sentence six of section 205(g). Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992) (citing Brown v. Sec'y of Health, Educ. & Welfare, 403 F. Supp. 938, 940–43 (E.D. Wis. 1975). Sentence six permits the court to remand a case to the Commissioner for further proceedings and order the evidence to be added to the record for consideration. See 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

Under section 205(g), sentence four, this Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir.

2000). In conducting such review, the Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the court's review of the Commissioner's conclusions of law is *de novo*. Id.; see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence . . . but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

## III. DISCUSSION

Claimant argues that the ALJ's determination should be reversed for two reasons: (1) the ALJ failed to properly evaluate the impact of Plaintiff's mental impairments on her ability to perform her past relevant work, and (2) the ALJ erred in his credibility assessment in failing to discuss Claimant's exemplary work history.

### A. The ALJ Supported His Determination that Claimant's Mental Impairments Were Non-Severe with Substantial Evidence

Claimant claims that the ALJ erred in determining that her mental impairments were non-severe. [ECF No. 19 at 1–2]. An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); Sullivan v. Berryhill, 317 F. Supp. 3d 658, 662 (D. Mass. 2018); Picard v. McMahon, 472 F.

Supp. 2d 95, 99 (D. Mass. 2007). A determination of nonseverity is generally made without reference to "age, education, and work experience." 20 C.F.R. § 416.920(c). To demonstrate severity, "a claimant must show that an impairment has more than a minimal effect on her ability to do basic work activities." Ortiz v. Astrue, No. 10-30009-MAP, 2011 WL 576602, at *4 (D. Mass. Jan. 10, 2011), report and recommendation adopted, No. 10-30009-MAP, 2011 WL 549775 (D. Mass. Feb. 9, 2011).

> A person who is able to perform basic work activities has abilities and aptitudes necessary to do most jobs. Examples of such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, and responding appropriately to usual work situations and changes to such routines.

Picard, 472 F. Supp. 2d at 99–100.

To determine whether a mental impairment is severe, the ALJ examines "the degree of functional loss attributable to the mental impairment in the four areas of activity considered to be essential to the ability to work." Oliveras v. Shalala, 870 F. Supp. 411, 414 (D. Mass. 1994) (citing 20 C.F.R. § 416.920a). The four areas of activity include: 1) daily living, 2) social functioning, 3) concentration, persistence or pace, and 4) deterioration or decompensation in work or work-like settings. Oliveras, 870 F. Supp. at 414 (citing 20 C.F.R. § 416.920a). In each area, the ALJ must rate the degree of the claimant's limitations and determine "whether the degree of functional loss is so severe that it would prevent the claimant from performing that activity." Oliveras, 870 F. Supp. at 414 (citing 20 C.F.R. § 416.920a).

Here, the ALJ determined that Claimant had mental impairments of anxiety, depression, and substance abuse disorder. [R. 22, 23, 25, 26]. The ALJ concluded the mental impairments were non-severe, based on evidence that Claimant was being treated for her impairments, and that they did not cause "more than minimal limitation" in Claimant's ability to perform basic

mental work activities. [R. 27]. As noted above, the ALJ considered the four functional areas of activity as required by the SSA regulations. [R. 28].

With respect to daily living, Claimant could do laundry and manage her self-care. [R. 370]. She could pay bills and count change. [R. 248]. In 2015, she remodeled her house but stopped due to pain in her fingers and feet. [R. 594–95]. Three months prior to the hearing, she flew to California to help watch her grandchildren. [R. 67–69]. Although she was not helping them physically, she was able to watch the grandchildren for two weeks. [R. 69]. In March 2016, Claimant flew to Iran. [R. 70–71]. Additionally, Dr. Goulding, in his mental RFC finding, found that Claimant could care for herself, prepare food, do light chores, drive, shop online, and attend AA meetings and other appointments. [R. 124]. The ALJ appears to have considered these facts and others in concluding that Claimant had only mild limitation for daily living. He found:

> In this area, the claimant has mild limitation. Activities of daily living includes adaptive activities such as cleaning, shopping, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using the telephone and using a post office. The claimant can carry out personal care. She can prepare meals. She does light laundry and light household chores. She is able to travel back and forth to California to assist her daughter with her two children. She is able to travel back and forth to Iran in March of 2016 to assist and visit her mother. She is able to drive a car. She does shopping by using a computer. She is able to pay bills, count change, and use a checkbook/money orders. She testified that she owns a multi-family house with her husband where she will collect rents and call contractors to perform work on the house as well as landscapers. She [remodeled] her house sometime in July of 2015.

[R. 28].

For social functioning, Dr. Carpenter found that Claimant had only mild limitations, while Mr. Condi found that Claimant had moderate limitations. [R. 105, 120]. Dr. Condie found that Claimant had moderate limitations in her abilities to interact with the public, accept instructions, respond appropriately to supervisors' criticism, complete a normal workday and

13

workweek without interruptions, and maintain attention and concentration for extended periods. [R. 125]. However, she was not significantly limited in her abilities to ask questions, request assistance, get along with coworkers and peers, and maintain overall appropriate social behavior. [R. 125]. Although Claimant had a history of family problems and pressure from work, she related adequately and got along with authority figures. [R. 120]. The ALJ, in concluding that her social functioning limitation was mild, found:

> The claimant is able to interact appropriately with her medical providers. She maintains ongoing relationships with her husband, mother, daughter and grandchildren. She has been able, in March of this year, to travel internationally to Europe, Turkey and ultimately to her destination of Iran where she stayed for one month (The claimant further testified that during the period of alleged disability she would travel to Iran every other year). She has further been able to conduct air travel to and from California where she spent time helping her daughter with the children. She has also visited in the U.S. with a cousin from England this year. She is able to deal with tenants and contractors in the multi-family house owned jointly by her and her husband.

[R. 28].

For concentration, persistence, or pace, Dr. Munroe found that Claimant could pay bills and shop on the computer. [R. 370]. She could watch TV and follow the shows. [R. 370]. She could complete activities of daily living in a timely matter. See [R. 370]. She could do serial sevens easily down to 51, spelled the word "world" backwards and forwards, and completed a three-step command without problems. [R. 370]. Dr. Carpenter found that Claimant had mild difficulties in maintaining concentration, persistence, or pace. [R. 106]. Dr. Condie also found Claimant faced mild difficulties in maintaining concentration, persistence, or pace, but that she concentrated adequately for simple tasks. [R. 120]. Although she had moderate limitations in completing a normal workday without interruptions, Dr. Condie observed that when Claimant was sober, she could maintain attention, concentration, persistence, and pace for routine tasks, for two hours at a time, over a normal workweek with normal supervision. [R. 125]. Both Drs. Carpenter and Condie concluded that Claimant had no episodes of decompensation. [R. 106,

14

120]. The ALJ's opinion found only mild limitation in concentration, persistence or pace, because:

> Mental status examinations have indicated that the claimant has no limitation with regards to concentration or memory and her medical records have indicated that the claimant had negative symptoms regarding depressed mood, insomnia and decreased appetite . . . . Her recent and remote memory is intact. She retains the ability to maintain attention, concentration, persistence and pace for tasks for two hours at a time over a normal workday/workweek. She is able to understand and recall simple and complex tasks. She has indicated that she has been able to maneuver airports and airfights for purposes of international and national travel.

[R. 28].

With regards to deterioration or decompensation in work or work-like settings, in finding there was no evidence that Claimant was deteriorating in a way that would have affected her ability to work, the ALJ explained:

> [C]laimant has experienced no episodes of decompensation, which have been of extended duration. Episodes of decompensation include an increase in signs or symptoms, which require the individual to enter a higher level of care or a need for increased medication or treatment. The claimant has not been hospitalized for extended periods.

[R. 28].

Claimant cites to the opinions by Dr. Munroe and the non-examining state agency consultants, as well as medical records and third-party statements, in challenging the ALJ's finding of non-severe mental impairments. [ECF No. 19 at 4–8, 11]. Claimant essentially alleges that the record supports a different conclusion than that reached by the ALJ. [ECF No. 19 at 4–8, 11–13]. Factual determinations are reserved for the Commissioner, and "the Court must uphold the Commissioner's determination, 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'" Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 159 (D. Mass. 2010) (quoting Rodriguez Pagan, 819 F.2d at 3). Here, the ALJ resolved a difference of opinion among the physicians as to whether Claimants'

mental impairments resulted in more than mild limitations with well-reasoned explanations based on the factual evidence.

Claimant further argues that the ALJ erred in determining her RFC by failing to consider her non-severe mental impairments. [ECF No. 19 at 9, 12]. In fact, the ALJ took account of Claimant's "emotional problems," her ability to "think, communicate, and care for her own needs," and the phycological assessment when he determined her RFC. [R. 32]. Although the ALJ did not reference Claimant's anxiety or depression with medical terminology in determining her RFC, the ALJ accounted for the effects of claimant's non-severe mental impairments.[3] [R. 32]. Although Claimant feels her non-severe impairments are more debilitating than found by the ALJ, this is a question of fact and the Court must defer to the ALJs determination where it was supported by substantial evidence. See Sullivan v. Colvin, No. 14-13772-LTS, 2015 WL 5613163, at *2 (D. Mass. Sept. 24, 2015) ("Where the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings when they are supported by substantial evidence.") citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991)).

For the reasons stated above, substantial evidence supports the ALJ's findings that Claimant's mental impairments were non-severe, and that her mental impairments were not so limiting as to preclude her from returning to her past relevant work.

---

[3] The Commissioner argues that non-severe mental impairments do not necessarily need to be taken into account in the RFC determination. [ECF No. 21 at 13–14]. The Court does not address that argument because it finds that the potential impacts of Claimant's non-severe mental impairments were considered.

## B. The ALJ Did not Err in Failing to Discuss Claimant's "Exemplary Work History"

Lastly, Claimant challenges the ALJ's credibility finding on the basis that the ALJ failed to discuss Claimant's "exemplary work history." [ECF No. 19 at 16]. Claimant argues that the ALJ failed to consider that from 1990, shortly after she immigrated to the United States, to 2012, she "earned covered earnings in virtually every available quarter" and that it is therefore unlikely that she would trade in her exemplary work career in order to receive disability benefits. [ECF No. 19 at 16]. Generally, claimants face a difficult battle in challenging credibility determinations because "under the substantial evidence standard, the Court must uphold the Commissioner's determination, 'even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.'" Amaral, 797 F. Supp. 2d at 159 (quoting Rodriguez Pagan, 819 F.2d at 3).

The First Circuit has not ruled on whether work history should inform the ALJ's credibility determination. See Alberts v. Astrue, No. 11-11139-DJC, 2013 WL 1331110, at *15 (D. Mass. Mar. 29, 2013). An ALJ, however, "is not required to discuss every piece of relevant evidence provided that [the ALJ's] conclusion is supported by substantial evidence." Foster v. Colvin, No. 15-11841-DJC, 2016 WL 3360574, at *9 (D. Mass. June 16, 2016) (citing Dube v. Astrue, 781 F. Supp. 2d 27, 34–35 n. 11 (D.N.H. 2011)) (affirming the ALJ's determination assessing the credibility of claimant's subjective complaints of pain and limiting symptoms). Here, the ALJ considered Claimant's work history, including the fact that she had been laid off from positions, and that after completing her most recent job as a consultant at a law firm, "she did not have additional work to do" and was "looking for part time work with a flexible schedule," which she could not find. [R. 31]. The ALJ determined that Claimant's self-assessment of her impairments "impacted her ability to work to a considerably more restricted degree than what is

established by the medical evidence." [R. 30]. Although the ALJ was not required to discuss the lengthy period during which Claimant earned wages and paid social security taxes, he nonetheless provided an explanation for why he discounted Claimant's assessment that she was unable to work, and the fact that Claimant would have preferred that the ALJ emphasize a different perspective on her work history is not a basis for reversal.

## IV.     CONCLUSION

The Court finds that the ALJ's decision was supported by substantial evidence and therefore <u>DENIES</u> Claimant's motion to reverse and remand and <u>ALLOWS</u> the Commissioner's motion to affirm.

**SO ORDERED.**

December 17, 2018                                         <u>/s/ Allison D. Burroughs</u>
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE